UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET E. F.,[1] | Case No. 5:20-cv-1638-MAR |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Janet E. F. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income Benefits ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order.

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## PROCEDURAL HISTORY

On September 13, 2017, Plaintiff protectively filed her applications for DIB and SSI, alleging a disability onset date of July 28, 2017. Administrative Record ("AR") at 15, 56, 190–97. Plaintiff's applications were denied initially on November 27, 2017, and upon reconsideration on February 21, 2018. Id. at 78–79, 91–92. On March 26, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 15, 122. On October 23, 2019, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ concerning her applications for DIB and SSI. Id. at 15, 33–47. A vocational expert also testified at the hearing. Id. at 46–51. On November 6, 2019, the ALJ issued a decision denying the applications. Id. at 15–26. Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision, which the Council denied on June 26, 2020. Id. at 1–6, 171–72.

On August 13, 2020, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed on June 7, 2021. Dkt. 22.

# II.

## PLAINTIFF'S BACKGROUND

Plaintiff was born on May 4, 1960. AR at 55, 190, 192. She was fifty-seven (57) years old[2] on the alleged disability onset date and fifty-nine (59) years old at the time of the administrative hearing. Id. at 55, 66, 80, 93. Plaintiff has an eleventh-grade education and work history as a merchandise packer, caregiver, babysitter, and supervisor. Id. at 39, 64, 88–89, 101–02, 213–14, 225. She alleges disability based on: (1) arthritis; (2) pain and swelling in her hands, legs, and knees; (3) low-back pain; (4) stiffness, numbness; (5) difficulty sitting, standing, or walking for long periods of

---

[2] As of the alleged onset date, Plaintiff was considered of "[a]dvanced age" by the Agency. AR 55, 66, 80, 93; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "persons of advanced age" as "age 55 or older").

time; and (6) sleep apnea.  Id. at 19, 56. 59, 67, 70–71, 75, 81, 85, 94, 98, 212, 221, 236, 247.

## III.
## STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months.  42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry.  Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.[3]

(4) Is the claimant capable of performing work she has done in the past?  If so, the claimant is found not disabled.  If not, proceed to step five.

---

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

3

1      (5) Is the claimant able to do any other work?  If not, the claimant is found

2          disabled.  If so, the claimant is found not disabled.

3  See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. §§ 404.1520(b)–(g)(1),

4  416.920(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

5      The claimant has the burden of proof at steps one through four, and the

6  Commissioner has the burden of proof at step five.  Ford, 950 F.3d at 1148;

7  Bustamante, 262 F.3d at 953–54.  Additionally, the ALJ has an affirmative duty to

8  assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If,

9  at step four, the claimant meets her burden of establishing an inability to perform past

10  work, the Commissioner must show that the claimant can perform some other work

11  that exists in "significant numbers" in the national economy, taking into account the

12  claimant's residual functional capacity ("RFC"), age, education, and work experience.

13  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); Tackett, 180 F.3d at 1098–99, 1100;

14  Reddick, 157 F.3d at 721.

## IV.

## THE ALJ'S DECISION

**A.    STEP ONE**

18      At step one, the ALJ found Plaintiff had not "engaged in substantial gainful

19  activity since July 28, 2017, the alleged onset date."  AR at 17.

**B.    STEP TWO**

21      At step two, the ALJ found Plaintiff had "the following severe impairments:

22  obesity[,] degenerative joint disease (of the bilateral knees), degenerative disc disease

23  (of the thoracic and lumbar spine), sleep apnea, and facet syndrome (lumbar and

24  thoracic)[.]"  Id. at 18.

**C.    STEP THREE**

26      At step three, the ALJ found Plaintiff did not "have an impairment or

27  combination of impairments that meets or medically equals the severity of one of the

28  listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Id. at 18.

## D. RFC DETERMINATION

The ALJ found Plaintiff had the RFC to perform light work[4] with the following limitations:

> [S]he can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand, walk or sit six hours out of an eight-hour workday; she can frequently climb ramps and stairs and occasionally climb ladders ropes and scaffolds; she can frequently balance and stoop, occasionally kneel and crouch; she can frequently crawl; and she must avoid concentrated exposure to extreme cold, wetness, hazardous machinery and unprotected heights.

Id. at 19.

## E. STEP FOUR

At step four, the ALJ found Plaintiff was "capable of performing past relevant work as a shoe packer." Id. at 25–26. The ALJ, therefore, found Plaintiff was not disabled. Id. at 26.

## V.

## PLAINTIFF'S CLAIM

Plaintiff presents one (1) disputed issue: whether the ALJ properly discounted her subjective symptom testimony.[5] Dkt. 22 at 3.

---

[4] "Light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, *2 n.6 (C.D. Cal. Dec. 30, 2020).

[5] Plaintiff frames the issue as whether the ALJ properly discounted her subjective symptom testimony "regarding her ability to stand/walk." Dkt. 22 at 3. However, because an ALJ is not required to discuss every piece of evidence or explain why every subjective limitation has been rejected, and because the parties in the remainder of the Joint Stipulation discuss other aspects of Plaintiff's testimony and the ALJ's respective findings, the Court reviews the broader issue of whether the ALJ properly discounted the subjective testimony as a whole. See, e.g., Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (an ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record); Conn v. Colvin, 2015 WL 2089368, *4 (W.D. Wash. May 5, 2015) (rejecting claim that ALJ is required to "explain why every bit of rejected testimony lacks credibility" and noting that the Ninth Circuit has referred to

# VI.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'" (quoting Robbins, 466 F.3d at 882)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

The reviewing court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only

---

subjective testimony "as a whole" without "isolating individual statements about particular symptoms") (citation omitted).

be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.

## DISCUSSION

## A.    THE ALJ FAILED TO PROVIDE SUFFICIENT REASONS FOR REJECTING PLAINTIFF'S SUBJECTIVE COMPLAINTS

### 1.    Relevant facts

#### a.    Plaintiff's subjective complaints

At the October 2019 hearing before the ALJ, Plaintiff testified that she last worked from 2016 to July 2017 warehousing. AR 34. That job entailed packing, shipping, receiving, "a little bit of everything." Id. She lifted up to forty (40) pounds and mostly stood, which became unbearable, so she eventually quit. Id. at 34–35, 37.

Before that, in 2010, she worked for Schneider Logistics, third-party warehousing for Wal-Mart. Id. at 35. She also served as a supervisor for Schneider, but only for a few months, and she still performed the same physical work as the other employees. Id. at 36. In 2005 and 2006, she worked for Commodity Logistics, shipping and receiving. Id. at 35. Finally, Plaintiff also earned money at various times babysitting, but it never reached a level of substantial gainful activity. Id. at 36.

Currently, for income, Plaintiff's children take care of her. Id. at 37. She lives in an apartment with her daughter, her daughter's two children, and her youngest son. Id. The apartment has stairs, which she climbs "[v]ery slowly," using the handrails. Id. at 37–38. She tries to help with her grandchildren, but there is little she can do. Id. at 38. She attempts to cook, but it is difficult because that involves standing. Id. at 38. Plaintiff can drive, but only locally, such as to doctors' appointments. AR 38. If she has to go somewhere else, her daughter will usually drive her. Id. at 38–39, 42. Plaintiff can't drive long distances because her medication makes her sleepy. Id. at 38. If she drives to an appointment, she will schedule it early and skip her medication so

7

she won't become drowsy.  Id.  If she goes other places, she needs a cart or basket to lean on.  Id. at 40.  If there is no basket or cart, she usually won't go.  Id.

When she sits or stands, her back and leg hurt.  For example, if she tries to cook, she'll have to take a break and sit down.  Id.  She has the same problem doing dishes; she can start, but she can't finish due to the pain.  Id.  She can stand for about five (5) or ten (10) minutes before she must sit down.  Id.  If Plaintiff experiences a lot of pain, she will use her cane, which she brought to her hearing, to ambulate around the house.  Id.  However, she doesn't move around much at home.  Id. at 41.

Plaintiff used to be able to carry groceries, but she can't anymore because she will lose her balance.  Id. at 41.  She used to be able to carry a 10-pound bag of potatoes, but not anymore.  Id. at 42.  She can lift a gallon of milk, but not a case of water.  Id. at 41–42.  She has to go to the grocery store with her daughter or granddaughter; she can never go by herself.  Id. at 42.

Plaintiff can't bend down and pick things up because doing so will hurt her back.  Id. at 41.  She cannot squat due to knee pain.  Id.  She can shower, but she no longer bathes because she can't get in and out of the tub.  Id. at 42–43.  Sometimes she's "a little wobbly" in the shower and must grab the towel rack to steady herself.  Id. at 43.  Plaintiff does not help with the cleaning, such as vacuuming, sweeping, or mopping, because she can't bend, and it hurts her back and leg.  Id.

She experiences pain mainly in her lower back and knees.  Id.  Her left knee is worse than her right.  Id.  It feels like "bones going together."  Id. at 44.  The pain in her back burns such that it causes headaches, which she wakes up to every morning.  Id. at 43–44.  If her pain is bad, she will lay in her bed, flat on her back.  Id. at 45.  She also sits on the couch and puts her leg up on a foot stool to relieve pain.  Id.

### b.    ALJ's decision

The ALJ rejected Plaintiff's subjective complaints for two (2) reasons: Plaintiff's testimony was inconsistent with (1) her sporadic and conservative treatment; and (2) the objective, normal, mild findings in the record.  Id. at 20–25.

2.     **Applicable law**[6]

When a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). "The ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC]").

"If the ALJ's . . . finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489. Moreover, as mentioned, a court must "review only

---

[6] Before the ALJ's decision, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, *3 (W.D. Wash. Mar. 4, 2020); see also R.P. v. Colvin, 2016 WL 7042259, *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating SSR 16-3p "implemented a change in dictation rather than substance").

9

the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn, 495 F.3d at 630. Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ. See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts . . . [and] may not take a general finding . . . and comb the [AR] to find specific conflicts." (citation omitted)).

### 3. Analysis

As discussed below, none of the ALJ's purported reasons constitute "specific, clear and convincing reasons" for rejecting Plaintiff's subjective complaints.

#### a. Treatment

The ALJ discounted Plaintiff's subjective testimony in light of her "somewhat sporadic treatment, with symptom management with conservative treatment." AR 21. This is insufficient for two (2) main reasons.

First, a claimant's sporadic treatment—also referred to in court decisions as treatment "gaps"—may serve as a valid reason for discounting testimony, provided the ALJ also explores any reason for failing to seek treatment. See Marsh v. Colvin, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (ALJ may consider treatment gap in assessing claimant's symptoms); Claire G. v. Berryhill, 2019 WL 2287733, *10 (D. Or. May 28, 2019) (ALJ erred by "fail[ing] to explore why [the claimant] had only sporadic mental health treatment"). However, here, the ALJ did not explain what she meant by "sporadic" or otherwise identify the specific periods Plaintiff failed to seek treatment, leaving Plaintiff unable to respond, and this aspect of the ALJ's reasoning unreviewable. See Brown-Hunter, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Moreover, from a review of the record it appears Plaintiff sought treatment for her allegedly disabling conditions throughout the relevant period. AR 262–559.

Second, while some of Plaintiff's treatment, such as over-the-counter medication of aspirin or ibuprofen, and physical therapy, may call into question the severity of her subjective complaints, as Plaintiff's condition progressed, she did not respond to conservative treatment and it became more aggressive. Id. at 216, 237, 240, 248, 264, 317, 412, 416. For example, Plaintiff initially had a positive response to physical therapy, but later records show it no longer helped. Id. at 296–98, 300–09, 310 (9/8/17 unable to perform some exercises due to pain), 311, 312 (9/18/17 unable to perform some exercises due to pain), 313–15, 319–20, 332 (10/26/17 back pain "failed NSAIDS, muscle relaxant[,] and physical therapy") 343–47, 348 (12/27/17 unable to complete stretch due to low back pain), 352 (10/27/17 continues to have pain in left knee; some days "she has a lot of pain"), 356 (2/5/18 Plaintiff "has regressed with pain levels, [range of motion], strength, and functional activity tolerance"), 366 (5/15/19 physical therapy "made no difference for pain control"), 372 (4/16/19 same), 381 (2/19/19 physical therapy "was done without enough help in the past"), 385–88 (1/18/19 same; Plaintiff "has failed [physical therapy] series"), 390 (12/18/18 "physical therapy . . . is helping some but not enough"), 403 (8/28/18 "physical therapy was done without help"), 407 (8/3/18 same), 412 (7/6/18 same), 440 (7/1/19 "lower back pain . . . failed NSAIDS, muscle relaxant[,] and physical therapy"), 473–74 (2/5/19 Plaintiff "regressed her progress"). Moreover, Plaintiff was also prescribed stronger medications, including Gabapentin[7], Tramadol[8], and Baclofen.[9] Id. at 240, 262, 265, 269, 331, 333, 362, 365–66, 370, 375,

---

[7] "Gabapentin is a medication that was originally developed to treat seizure disorders such as epilepsy. It is also used to treat neuropathic pain. Neuropathic pain is pain from inflamed or damaged nerves." Escobar v. Smith, 2013 WL 6389034, *5 (E.D. Cal. Dec. 6, 2013).
[8] "Tramadol is a narcotic used to relieve moderate to moderately severe pain." Trejo v. Berryhill, 2018 WL 3602380, *8 (C.D. Cal. July 25, 2018).
[9] "Baclofen is a skeletal muscle relaxant prescribed to treat pain and certain types of spasticity from multiple sclerosis, spinal cord injuries[,] and other spinal cord diseases." Bitler v. Saul, 2020 WL 916869, *2 (E.D. Cal. Feb. 26, 2020).

379, 381, 383, 385, 387, 390, 392, 395, 399, 411–12, 414, 416, 420, 437, 440, 443, 458, 460.[10]

Finally, although not entirely clear from the record because many treatment notes are duplicate, it appears Plaintiff received at least twelve (12) injections to relieve her various ailments. Id. at (8/21/17 plan for steroid injections in both wrists), 332 (10/26/17 injection in right wrist joint, plan for injections in both knees), 362, 364 (7/10/19 injection), 367 (5/15/19 injection), 374 (4/16/19 injection), 384 (2/19/19 injection), 388 (1/18/19 injection; series of three injections ordered), 393 (12/18/18 injection), 395, 398 (10/23/18 injection), 402 (9/25/18 injection), 415 (7/6/18 injection), 440, 443 (5/1/19 plan for injection), 547, 550 (9/18/18 injection), 559 (10/26/18 injection). Plaintiff's injection regime, often monthly or less, is not conservative treatment. See, e.g., Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing doubt that "shots to the neck and lower back qualify as 'conservative' medical treatment"); Contreras v. Berryhill, 2020 WL 619792, *4 (N.D. Cal. Feb. 10, 2020) (stating "[n]umerous courts have rejected the argument that injections are 'conservative'"). This is especially true when considered in conjunction with Plaintiff's strong medications, which included at least one narcotic. See, e.g., Joyce A. A. v. Saul, 2021 WL 1546956, *3 (C.D. Cal. Apr. 20, 2021) (ALJ's determination that claimant received conservative treatment not supported by substantial evidence where treatment included physical therapy, "Gabapentin, Baclofen, and Tramadol, a narcotic," in conjunction with back injections); Christine G. v. Saul, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) ("Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment.").

---

[10] In addition to these drugs, Plaintiff received, at various points, cocktails of numerous other medications, including Clonazepam, Escitalopram, Montelukast, Cymbalta, Lipoderm, Voltaren, Robaxin, Duloxetine, and Methocarbamol. AR 240, 333, 362, 367, 375, 383, 385, 387, 390, 392, 395, 399, 403, 407, 414, 416, 420, 437, 440, 442.

1    Therefore, the ALJ's reasoning that Plaintiff's subjective complaints were

2    inconsistent with her sporadic, conservative treatment does not constitute a "specific,

3    clear, and convincing reason" for rejecting her testimony.

4                        **b.      Lack of objective medical support**

5         The only other rationale offered by the ALJ was the inconsistency between the

6    objective findings and Plaintiff's testimony.[11]  This alone is not a sufficient basis to

7    support the determination.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)

8    (lack of objective medical evidence to support subjective symptom allegations cannot

9    form the sole basis for discounting pain testimony); Rollins v. Massanari, 261 F.3d

10   853, 856–57 (9th Cir. 2001); Dschaak v. Astrue, 2011 WL 4498835, *1 (D. Or. Sept.

11   27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as

12   erroneous, the ALJ's [adverse subjective testimony] determination could not rely

13   solely on conflicts with the medical evidence.").

14        As such, even if the ALJ's construction of the medical record was fair,

15   inconsistency between the record and Plaintiff's testimony, alone, would not be a

16   proper basis for rejecting her subjective complaints.  Thus, the ALJ's claim that

17   Plaintiff's subjective complaints were inconsistent with the objective findings in the

18   medical record does not constitute a "specific, clear, and convincing reason" for

19   rejecting Plaintiff's testimony.

20   ///

21   _____

22   [11] The ALJ also mentioned that Plaintiff "declined a physical therapy referral" (AR 21, citing id. at
     555), a factor that may, if inadequately explained by a claimant, support an ALJ's assessment of

23   subjective complaints.  See Molina, 674 F.3d at 1112 ("the ALJ may consider . . . unexplained or
     inadequately explained failure . . . to follow a prescribed course of treatment"); 20 C.F.R.

24   §§ 404.1530, 416.930 (claimants must "follow treatment prescribed by [their] medical source(s) if
     this treatment is expected to restore [their] ability to work").  Notably, the Commissioner does not

25   defend this as a reason supporting the finding, and the Court has therefore not treated it as a
     separate reason.  Dkt. 22 at 7–11; see Kinley v. Astrue, 2013 WL 494122, at *3 (S.D. Ind. Feb. 8,

26   2013) ("The Commissioner does not respond to this [aspect of claimant's] argument, and it is
     unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was

27   an oversight.  Either way, the Commissioner has waived any response.").  Even if the Commissioner
     has not waived this as possible reason, it is not convincing because, as Plaintiff points out, she in

28   fact attended physical therapy days later.  Dkt. 22 at 6; AR 476.

                                              13

### 2.      Harmlessness

Finally, the ALJ's error in rejecting Plaintiff's subjective complaints is not harmless. A decision of the ALJ will not be reversed for errors that are harmless. <u>Stout v. Comm'r of Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing <u>Burch</u>, 400 F.3d at 679). However, a reviewing court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." <u>Id.</u> at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability decision. <u>Id.</u> at 1055.

Here, the ALJ's opinion that Plaintiff could perform her past work and was not disabled necessarily relied on the ALJ's rejection of Plaintiff's allegations regarding the limiting effect of her impairments. Therefore, the Court cannot find the ALJ's improper analysis of Plaintiff's subjective complaints was harmless error. <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 492–93 (ALJ's failure adequately to specify reasons for discounting claimant testimony "will usually not be harmless").

**VIII.**

**<u>RELIEF</u>**

## A.      APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" <u>Hill</u>, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" <u>Id.</u> (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." <u>Id.</u>; <u>see also</u> <u>Reddick</u>, 157 F.3d at 729 ("We do not remand this case for further

14

proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B.     ANALYSIS**

Here, the Court concludes remand for further proceedings is warranted.  On this record, it is not entirely clear whether Plaintiff was actually disabled during the relevant period.  See Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003).  For example, if Plaintiff's treatment was sufficiently sporadic to warrant discounting her testimony, those gaps in treatment, along with Plaintiff's excuse for failing to seek consistent treatment, if any, were not explored at the hearing or in the decision.  Accordingly, because it is unclear on this record whether Plaintiff was in fact disabled, remand here is on an "open record."  See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115–16; see also Alderman v. Colvin, 2015 WL 12661933, *8–9 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's testimony and give appropriate consideration to physician opinions, step-two findings, and step-five analysis).  The parties may freely take up the issue raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

**IX.**

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Order.  **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated:  July 6, 2021

_____
HONORABLE MARGO A. ROCCONI
United States Magistrate Judge